UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GREGORY ALLEN GIBSON,
#178345,

    Petitioner,                                         Case No. 09-cv-12395

v.                                                  HONORABLE STEPHEN J. MURPHY, III

THOMAS R. BELL,

    Respondent.

_____/

**OPINION AND ORDER DENYING RESPONDENT'S MOTION TO DISMISS** (docket no. 5)**, DENYING PETITION FOR WRIT OF HABEAS CORPUS** (docket no. 1)**, AND ISSUING CERTIFICATE OF APPEALABILITY**

Pending before the Court are petitioner Gregory Allen Gibson's *pro se* petition for a writ of habeas corpus and Respondent's motion to dismiss the petition. Respondent contends that the petition is barred by the one-year statute of limitations. The Court finds it more efficient to address the merits of Gibson's claims than to analyze whether the claims are time-barred. The petition will be denied on the merits.

**BACKGROUND**

A. State Court Proceedings

Gibson was charged in Wayne County Circuit Court, Michigan with two counts of assault with intent to commit murder, possession of a firearm by a felon, discharge of a weapon in a building, and possession of a firearm during the commission of a felony. The charges arose from an argument between Gibson and Toyelle Cobb in a building in Detroit on October 9, 2001. During the argument, Cobb apparently called Anthony Underwood

and asked him to help her move her things out of the building.  When Underwood arrived, he observed Cobb and Gibson arguing.  Gibson then brandished a .22 caliber handgun from his pocket and shot Cobb in the abdomen.  Gibson subsequently fired a gunshot at Underwood, but missed, and Underwood fled the building.  Gibson later permitted Underwood to reenter the building and retrieve Cobb's children.  Gibson remained with Cobb and attempted to administer first-aid until the police arrived.  The police arrested Gibson and confiscated his handgun.

On July 3, 2002, Gibson pleaded no contest to one count of assault with intent to commit murder, Mich. Comp. Laws § 750.83, discharge of a weapon in a building, Mich. Comp. Laws § 750.234b, and felony firearm, Mich. Comp. Laws § 750.227b.  The prosecutor moved at sentencing to dismiss charges on the felon-in-possession count and one count of assault with intent to commit murder.  The court granted the motion.  The prosecutor also agreed to withdraw a notice charging Gibson with being a habitual offender, and the trial court agreed to sentence Gibson at the low end of the sentencing guidelines plus two years in prison for the felony firearm conviction.  *See* docket no. 7-11.

Before being sentenced, Gibson, through counsel, made an informal request off the record to withdraw his plea of no contest.  The trial court denied the request finding that Gibson pleaded freely and voluntarily, and sentenced him to concurrent terms of 171 months to thirty years in prison for the assault and one to four years for discharging a weapon in a building.  The court ordered Gibson to serve a consecutive term of two years in prison for the felony firearm offense.  *See* docket no. 7-11.

Gibson subsequently filed a post-conviction motion renewing his request to withdraw his plea on the ground that the trial court failed to comply with the Michigan Court Rules

and case law related thereto at the plea proceeding. The trial court found no basis for withdrawing the plea and denied his motion on the record. See docket no. 7-11, at 12.

On direct appeal, Gibson raised the same issue, and argued also that the trial court abused its discretion by refusing to permit Gibson to withdraw his plea before and after sentencing.[1] The Michigan Court of Appeals denied the delayed application for leave to appeal "for lack of merit in the grounds presented." *People v. Gibson*, No. 251783 (Mich. Ct. App. Dec. 17, 2003). *See* docket no. 7-13. Gibson's application for leave to appeal in the Michigan Supreme Court was returned to him on November 28, 2005, because it was untimely.

On November 30, 2005, Gibson wrote a letter to the trial court again seeking leave to withdraw his plea due to his alleged incompetence at the plea proceeding. He stated that, in the years before and after his plea, he believed that he had been "covertly surgically implanted" and that the images he saw were being transmitted to a computer via global positioning satellites. The trial court treated the letter as a motion to set aside the plea and denied the motion on January 6, 2006. The motion was renewed before the trial court and on January 4, 2007 was again denied. The Michigan Court of Appeals denied leave to appeal the trial court's order "for failure to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Gibson*, No. 275512 (Mich. Ct. App. Oct. 23, 2007). *See* docket no. 7-15. The Michigan Supreme Court denied leave to appeal

---

[1] Gibson's first challenge on appeal – the one he initially raised post-conviction before the trial court – was that the trial judge violated Michigan Court Rules 6.203(B) and (E) in accepting his plea of no contest. In addition to raising this issue before the Michigan Court of Appeals, Gibson also raised the independent claim that the trial judge abused its discretion in denying Gibson leave to withdraw his plea of no contest.

for the same reason.  *See People v. Gibson*, No. 135420 (Mich. Sup. Ct. June 23, 2008).  *See* docket no. 7-16.

Meanwhile, on December 15, 2006, Gibson filed an amended motion for relief from judgment in which he raised the claims he asserts in his habeas petition.  He alleged through counsel that:  (1) his mental illness and his former appellate attorney's ineffectiveness provided "good cause" for the failure to (a) properly support the plea-withdrawal issue raised in his prior appeal and (b) argue the new grounds raised in his motion; and (2) due process required plea withdrawal where mental illness rendered him incompetent to enter a no-contest plea and where trial counsel did not explain possible defenses to the charges.  The trial court denied Gibson's motion on January 4, 2007, and the Michigan Court of Appeals determined it lacked jurisdiction to consider Gibson's appeal from the trial court's order.  The Court of Appeals stated that the trial court's order was actually a denial of a successive motion for relief from judgment.  *See People v. Gibson*, No. 275512 (Mich. Ct. App. Jan. 25, 2007).  *See* docket no. 7-15.  The Michigan Supreme Court denied leave to appeal because Gibson's motion for relief from judgment was prohibited by Michigan Court Rule 6.502(G) (successive motions).  *See People v. Gibson*, No. 133888 (Mich. Sup. Ct. Sept. 10, 2007).  *See* docket no. 7-19.

B.  <u>Federal Habeas Proceedings</u>

Gibson filed his habeas corpus petition along with a motion for equitable tolling of the statute of limitations.  The State moved to dismiss the petition for failure to comply with the statute of limitations.

Because expiration of the statute of limitations does not pose a jurisdictional bar to habeas review, the Court is not required to address the issue before considering the merits

of the petition. *See Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006) (citing *Day v. McDonough*, 547 U.S. 198, 205 (2006)). Because resolution on the merits is more straightforward than resolution on the limitations issue, the Court will consider the merits of the petition first. *See, e.g., id.* ("[B]ecause neither the statute of limitations nor procedural default constitutes a jurisdictional bar to our review, we shall, in the interest of judicial economy, proceed to the merits of Trussell's petition." (internal citations omitted)).

## STANDARD OF REVIEW

Gibson is entitled to the writ of habeas corpus if he can show that the state court's adjudication of the merit of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court

5

making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

## DISCUSSION

A. Competence

Gibson alleges that he is entitled to withdraw his plea because his plea was not made knowingly and voluntarily. Specifically, Gibson claims that his mental illness rendered him incompetent to enter a no-contest plea.

1. Clearly Established Law

A guilty or no-contest plea is a waiver of certain constitutional rights and, therefore, must be a knowing, voluntary, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Specifically, the Supreme Court has stated:

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

*Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).

"A criminal defendant may not . . . plead guilty unless he does so 'competently and intelligently.' " *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)). The standard for competency to stand trial is "(1) 'whether' the defendant has 'a rational as well as factual understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.' " *Indiana v. Edwards*, 128 S. Ct. 2379,

6

2383 (2008) (quoting *Dusky v. United States,* 362 U.S. 402, 402 (1960) (per curiam)) (emphasis omitted). In other words, "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri,* 420 U.S. 162, 171 (1975). The same standard applies to competency to plead guilty, *Moran*, 509 U.S. at 391 (competency standard for pleading guilty or waiving the right to counsel is the same as the competency standard for standing trial), and, by logical extension, to competency to plead no contest.

Nevertheless, "not every mental illness demonstrates incompetence to stand trial." *Rever v. Acevedo*, 590 F.3d 533, 538 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996)). "[R]ather the evidence must indicate a *present* inability to assist counsel or understand the charge." *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984) (emphasis added). "The burden on the petitioner seeking federal habeas relief on the grounds of incompetency is heavy." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992). " 'Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner.' " *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979) (quoting *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973)). A state court's factual conclusion regarding competency is presumed correct and the applicant has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (trial court's conclusion as to competency is a factual one).

2. <u>The Competency Report, Plea, and Sentencing</u>

The criminal incident in this case occurred on October 9, 2001. On February 20, 2002, Gibson was interviewed by Dexter Fields, M.D., a consulting forensic examiner for Wayne County Circuit Court. Dr. Fields determined that Gibson was competent to stand trial. In reaching this conclusion, Dr. Fields noted that Gibson exhibited no signs or symptoms of a psychotic process and that there was no evidence of mental illness, hallucinations, delusional thinking, distortions of reality, brain dysfunction, or psychological disturbance. Gibson was well-oriented to time, place, and person. He was fully aware of the charges pending against him, his position as the defendant, and the strategies available to him for his defense. He appeared to be capable of assisting in his own defense and of following and comprehending procedures and testimony. Dr. Fields prepared two reports: a report of competency to stand trial and a report of criminal responsibility. *See* docket no. 7-16, at 36-42.

On March 29, 2002, the trial court, after considering Dr. Fields's competency report, concluded that Gibson was competent to stand trial. The court based its ruling entirely on Dr. Fields's report.

At Gibson's plea proceeding on July 3, 2002, Gibson claimed to understand the charges against him, the plea and sentencing agreement, and the fact that a no-contest plea was similar to a guilty plea. Although most of his answers to the trial court's questions were a simple, "Yes," he did ask for clarification when the trial court stated that it would be sentencing him to a term of years. After the court explained that the sentence would consist of a number of years, as opposed to life imprisonment, Gibson stated that he understood. He also stated that no promises other than the plea agreement had been

made to him and that no one had forced him to plead no contest. He said that he had discussed the pretrial settlement offer with his attorney, and he claimed to understand the rights he was waiving. He also confirmed that he wanted to plead no contest. Tr. July 3, 2002, at 3-7 (docket no. 7-11). Although the plea proceeding occurred more than four months after Gibson was evaluated for competency, there is no indication in the record that his mental condition deteriorated between the psychiatric interview and his change of plea.

At sentencing, on August 19, 2002, Gibson informed the trial court that he had been "trying to get some x-rays because there's other situations pointing towards NATO-technology and political persecution in this matter." Tr. Aug. 19, 2002, at 16 (docket no. 7-11). This was the only irrelevant comment he made before the trial court. Gibson went on to say that he had not intended to kill anyone during the incident with Cobb and Underwood, and that he had been protecting himself after someone kicked in his door three times. He also informed the trial court that he had not read the sentencing agreement because he did not have his eye glasses with him at the time.

3. Post-Conviction Psychiatric History

On August 28, 2002, while incarcerated, Gibson was evaluated by a psychologist for the Department of Corrections. The psychologist stated that Gibson had disturbed thinking and experienced delusions of persecution. *See* docket no. 7-16, at 74-76.

Over a year later on January 30, 2004, the Department of Corrections performed a psychiatric assessment on Gibson. Gibson was uncooperative during the interview and exhibited a known behavior of accusing people of plotting against him. The interviewer concluded that Gibson could be appropriate when he wanted to be and that he was capable of adjusting his behavior according to what was required of him. Subsequent progress

notes completed by mental health professionals for the Department of Corrections indicate that Gibson suffered from a long-standing paranoid personality disorder or delusional system, but that he did not appear to be psychotic and he could follow directions when he was so inclined. See docket no. 9.

On March 8, 2005, the Department of Corrections conducted a comprehensive psychiatric examination. The interviewer noted that three prior comprehensive psychiatric examinations failed to diagnose Gibson with a major mental illness, but that his symptoms may have become more intense over time. See docket no. 9.

On March 9, 2005, Gibson was involuntarily admitted to a psychiatric hospital managed by the Department of Corrections. The psychiatrist who interviewed Gibson stated that Gibson's symptoms had increased since he re-entered the correctional system in 2002. The psychiatrist placed Gibson on medication after concluding that he was psychotic and manic. On March 24, 2005, a committee of three mental health professionals reviewed the evidence and determined that Gibson was mentally ill. Finally, in a discharge/transfer summary dated July 14, 2006, a social worker for the Department of Corrections stated that Gibson had made progress and no longer demonstrated paranoid or delusional ideation. See docket no. 9.

4. Summary and Conclusion

To summarize, a few months before Gibson pleaded no-contest, a psychiatrist concluded that Gibson was capable of consulting with his lawyer and understanding the proceedings against him. The trial court accepted the psychiatrist's report and concluded that Gibson was competent to stand trial. The subsequent plea colloquy, though brief, supports the conclusion that Gibson was competent to plead no contest. He spoke

rationally, he answered the trial court's questions appropriately, and he presented no evidence that Dr. Field's evaluation of him was professionally inadequate.

Although Gibson subsequently was treated for symptoms of mental illness, his psychiatric problems after his plea do not necessarily render his plea involuntary and unknowing. *See Medina v. Singletary*, 59 F.3d 1095, 1106-07 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a *present* inability to assist counsel or understand the charges. Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." (internal and end citations omitted) (emphasis added)). The record indicates that Gibson was capable of assisting his attorney and understanding the charges against him at the time of his plea. He was not described as "psychotic and manic" until 2005, years after his plea. The facts do not unequivocally and clearly generate a real, substantial, and legitimate doubt as to Gibson's mental capacity at the time of his plea.

Nor was there substantial doubt as to Gibson's capacity to stand trial such that the trial court should have conducted a more robust evidentiary hearing and further considered the competency issue. *See Pate v. Robinson*, 383 U.S. 375 (1966); *Drope v. Missouri*, 420 U.S. 162 (1975); *Mackey v. Dutton*, 217 F.3d 399, 413-14 (6th Cir. 2000). The trial judge relied on report of Dr. Fields, which concluded that Gibson was competent to stand trial. Additionally, the trial court had the benefit of observing Gibson's demeanor on other occasions such as at his arraignment and plea hearing. Gibson has not rebutted with clear and convincing evidence the presumption of correctness given the trial court's finding of competence. 28 U.S.C. § 2254(e)(1). The trial court's determination that Gibson was

competent to stand trial is entitled to absolute deference.  *See Mackey*, 217 F.3d at 414.  Gibson has not established entitlement to habeas relief on his claim that his plea was not freely given due to mental incompetence.

B.  Trial Counsel

Gibson alleges next that his trial attorney did not explain to him the defenses available to the charges.  Gibson contends that he had a viable self-defense claim.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  In guilty plea cases, the "performance" prong requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases.  *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985).  The "prejudice" prong requires demonstrating that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id.* at 59.  The petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*

Gibson claims that his attorney did not explain any possible defenses to him, yet he has not alleged any viable defense that his attorney could have raised.  Gibson was apprehended at the scene of the crime, and his weapon was taken by the police.  It appears from the record that both complainants were able to identify him and to explain to the police what happened.  At least one of the complainants was personally acquainted with Gibson, and Gibson apparently admitted his role in the shootings during an interview with the police.

Gibson maintains that he had a viable self-defense claim because Cobb repeatedly kicked in his door prior to the shooting. Even if Cobb kicked in the door, a person normally must "try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *People v. Riddle*, 467 Mich. 116, 119 (2002). It appears from the limited record before the Court that neither Cobb nor Underwood were armed and that Gibson's shooting was entirely unjustified. Therefore, Gibson would not have had a viable claim of self-defense.

Gibson has failed to show that his trial attorney's alleged failure to explain or employ any defenses, including that of self-defense, amounted to a deficient performance. And because Gibson has not alleged that he would have insisted on going to trial but for his attorney's alleged errors, he has failed to show that he was prejudiced by his attorney's performance. The Court will deny habeas relief on Gibson's claim of ineffective assistance of counsel.

C. Trial Court's Treatment of Gibson's Post-conviction Motion

Gibson also claims that the trial court erred by refusing to allow his appellate attorney to supplement or amend his motion to set aside the plea and that the Michigan Court of Appeals erred in refusing to permit his appellate attorney to appeal the trial court's order. Gibson asserts that due process requires a remand to the trial court to consider the merits of his amended motion for relief from judgment.

The trial court denied Gibson's amended motion for relief from judgment because, in its opinion, Gibson never filed an initial motion for relief from judgment and, therefore, had nothing to amend. The Michigan Court of Appeals denied leave to appeal the trial court's order on the ground that it lacked jurisdiction.

13

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)). Furthermore, habeas "relief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedures because such claims relate to a state civil matter, not the custody of a defendant." *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)). Consequently, Petitioner's claims about the trial court's handling of his amended motion for relief from judgment and the appellate court's determination that it lacked jurisdiction are not cognizable on federal habeas review. *Id*.

D. <u>Appellate Counsel</u>

Gibson also contends that his appellate attorney's performance provided cause for his failure to adequately raise his plea-withdrawal issue during the first appeal and for failing to argue the grounds raised in his amended motion for relief from judgment. This Court has not treated Gibson's claims as procedurally defaulted. Therefore, it is unnecessary to decide whether Gibson's first appellate attorney's performance provided cause for Petitioner's failure to adequately raise and argue issues during the first appeals. *Cf. Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (holding that, "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result

in a fundamental miscarriage of justice").

To the extent that Gibson claims his first appellate attorney was ineffective in not raising his claims in his first appeal to the Michigan Court of Appeals, he must show that his appellate attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687.[2] The "deficient performance" prong requires showing that appellate counsel made an objectively unreasonable decision to raise other issues. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010). To show "prejudice," the petitioner must demonstrate a reasonable probability that, but for his attorney's failure to raise his claims on appeal, he would have prevailed. *Id.*

Gibson's claims lack merit for the reasons already given above. The claims are not clearly stronger than the ones Gibson raised through counsel in his first appeal, and there is not a reasonable probability that Gibson would have prevailed on appeal if his first appellate attorney had raised Gibson's habeas claims. Therefore, Petitioner's first appellate attorney was not ineffective for failing to raise his claims. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.").

**CONCLUSION AND ORDER**

The state courts' rejection of Gibson's claims did not result in an unreasonable determination of the facts and was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

**WHEREFORE,** it is hereby **ORDERED** that Respondent's motion to dismiss the

---

[2] The *Strickland* standard applies to claims about appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

habeas petition based on the running of the statute of limitations (docket no. 5) is **DENIED**.

**IT IS FURTHER ORDERED THAT** the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** a certificate of appealability is **GRANTED** on the competency issue, specifically whether Petitioner was competent to plead no contest, whether the trial court should at least have conducted further inquiry into his competency before accepting his plea, and whether it should have permitted him to withdraw the plea at sentencing. The Court finds that reasonable jurists could disagree with the Court's resolution of Petitioner's due process / competency claim and concludes that the issue is adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Gibson may proceed *in forma pauperis* on appeal because he was permitted to proceed in that fashion before this Court, and because the Court finds an appeal could be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).

**SO ORDERED**.


                               s/Stephen J. Murphy, III
                               Stephen J. Murphy, III
                               United States District Judge

Dated: September 10, 2010


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 10, 2010, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager